**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**UNITED STATES**                                                                                           **PLAINTIFF**

v.                              Case No. 4:04-cv-1503
                                       (4:03-cr-00110-01)

**PHILLIP RAY MORENO**                                                                        **DEFENDANT**

**ORDER**

Presently before the Court is Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, Defendant's Motion to Amend his Motion under 28 U.S.C. § 2255, the Government's Motion to file response out of time, and Defendant's Motion for Appointment of Counsel.

**I.  BACKGROUND**

The bank robbery that Defendant was charged with committing occurred on January 7, 2003.  According to Defendant's counsel, First Assistant Federal Public Defender for the Eastern and Western Districts of Arkansas Jerome Kearney, Defendant surrendered himself to authorities in California in March 2003, and cooperated with the FBI by giving incriminating statements as to this bank robbery.  Defendant's counsel states in his affidavit submitted to the Court that he was assigned to represent Defendant on June 11, 2003, and that Defendant agreed to enter a guilty plea to the bank robbery charge after exploring various settlement options and sentencing considerations.

On October 16, 2003, Defendant entered a plea of guilty to Count 1, Armed Bank Robbery in violation of 18 U.S.C. § 2113(a) & (d).  At the plea hearing, the Court read the

indictment and asked Defendant, "How do you plead to the charge in the indictment?," to which he replied, "Guilty." The Court reviewed the rights that the Defendant was waiving by entry of a guilty plea, and Defendant stated that he understood those rights. Then, the Court proceeded to inform the Defendant of the twenty-five year statutory maximum and the sentencing guideline range under U.S.S.G. § 2B3.1. However, the Court also stated, "You understand we can't tell you, until we see the presentence report, precisely how this will work. But do you understand how it works?," and the Defendant responded, "Yes, sir, I do." Then, the Court had the Assistant United States Attorney state the facts of the case, and the Defendant stated that the statement was correct and true. Finally, the Court informed the Defendant that it usually takes approximately seven weeks for the presentence report to be prepared and that, after it has been prepared, he, the Defendant, and his attorney and the United States Attorney would have the opportunity to examine it. The Court stated that if there were any factual errors or mistakes in the presentence report that affect the sentencing, they must be brought to the Court's attention before sentence is imposed.

Defendant's counsel states in his affidavit that after the preparation of the presentence report, but prior to his sentencing, Defendant indicated a willingness to cooperate against a co-defendant in order to receive a downward departure of up to 50%. Defendant's counsel also states that Assistant United States Attorney Linda Lipe offered those terms, and Defendant appeared before a Grand Jury and offered testimony against his co-defendant in the bank robbery on January 6, 2004.

On January 22, 2004, at the sentencing hearing, the Court asked if there were any factual errors or mistakes in the presentence report, and Defendant's counsel replied that there were

none. Then, the Court explained, in detail, the consequences of the enhancements because Defendant was deemed a career offender under U.S.S.G. § 4B1.1 based upon the presentence report, as (1) the defendant was at least eighteen years old at the time of the offense; (2) the offense of conviction was a crime of violence; and (3) the defendant had at least two prior felony convictions of crimes of violence. The presentence report states that on June 5, 1992, the Defendant pled guilty, at the age of 25, to Second-Degree Armed Robbery, and was sentenced to seven years' imprisonment.[1] The presentence report also states that on March 27, 1997, the Defendant pled guilty to Force/Assault with a Deadly Weapon (not firearm): Great Bodily Injury.[2]

      The Court stated that the final offense level was 31 and that a career offender's criminal history category is always a category VI. However, the Court also noted that due to the Defendant's extensive criminal history, he would have fifteen criminal history points, which would, in any event, result in a criminal history category of VI. The Court stated that, under the guidelines, this resulted in a sentencing range of 188 to 235 months' imprisonment. The Court reviewed the statements by Defendant's counsel in support of mitigation and the letters submitted to the Court on behalf of the Defendant and by the victims, the Defendant apologized to the Court, his mother, and the victims of his crime. He requested that the Court sentence him at the low end of the guideline range and that the Court recommend a "severe drug treatment program." On January 22, 2004, Defendant was sentenced to two-hundred (200) months' imprisonment, five (5) years' supervised release, $11,607 in restitution, and a $100 special assessment.

---

[1] The arrest date is stated as 10/5/1989.

[2] The arrest date is stated as 3/12/1997.

Although counsel for the Defendant states in his affidavit that he does not recall the specifics of his discussion with the Defendant regarding his right to appeal, "in keeping with [his] practice, [he] is certain that [he] discussed with him his right to appeal and also indicated to him that [he] saw no valid basis for an appeal given the facts and circumstances of the case." Defendant's counsel submitted a letter with his affidavit dated January 23, 2004, in which he states:

> Enclosed with this letter you will find a copy of the Judgment which the Court entered in your case. You should very carefully review each provision set forth in the judgment, since you will be held strictly accountable for everything in it.
> As we discussed after the sentencing hearing, an appeal is not indicated in your case; so none will be taken.

On November 26, 2004, Defendant filed his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The Government filed a Motion for Reduction of Sentence on January 12, 2005, and a supplement thereto on January 27, 2005. Pursuant to Federal Rule of Criminal Procedure 35, the Government requested a 50% reduction in the 200 months sentence imposed on Defendant. On January 31, 2005, after a full review of the record, the Court reduced Defendant's sentence from 200 months to 150 months based upon his substantial assistance to the United States Government. The Court also ordered the Government to respond on or before February 8, 2005, to the Defendant's § 2255 motion. The Government filed a Motion for Order permitting it to file response out of time on February 10, 2005, and submitted its response to Defendant's motion under 28 U.S.C. § 2255 that day. The Government's motion to file response out of time is granted.

On April 26, 2005, Defendant filed a Motion for Appointment of Counsel. The Court denies Defendant's Motion for Appointment of Counsel as moot. On September 22, 2005, Defendant filed a motion to amend his previous motion under 28 U.S.C. § 2255. Defendant's Motion to Amend is granted.

## II. DISCUSSION

In Defendant's Motion, he states that his conviction was obtained by a plea of guilty which was unlawfully induced or not made voluntarily or with an understanding of the nature of the charge and the consequences of the plea. In support of this assertion, Defendant states that only a jury may enhance a sentence and challenges his criminal history enhancements. He requests that the Court "reconsider the Supreme Court's recent ruling on doubling or [e]nhancing a sentence based on past history," but provides no citation of authority.

The Court notes that the sentence of 200 months imprisonment was well below the twenty-five year statutory maximum. Furthermore, the enhancement under the guidelines was based upon prior criminal convictions. Defendant does not allege that these convictions fail to meet the requirements under the career criminal provisions of the guidelines. In *United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738, 756 (2005), the United States Supreme Court reaffirmed its holding in *Apprendi* that "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (emphasis added). Therefore, Defendant's argument is without merit.

Second, Defendant alleges that his conviction was obtained by the violation of the protection against double jeopardy. Defendant states that the Court erred during sentencing by

5

doubling the sentence allowed by the Federal Sentencing Guidelines when he was "only charged with one count of bank robbery." The Court finds that this argument is without merit. *See e.g., Witte v. United States,* 515 U.S. 389, 115 S. Ct. 2199 (1995); *United States v. Thomas*, 930 F.2d 12, 14 (8th Cir. 1991).

Finally, Defendant alleges that he was denied the effective assistance of counsel. He states that his attorney of record would not help him during or after "these proceedings," and "in criminal cases involving pro-se appellants the Court of Appeals treats notice of appeal as motion for extension of time due to excusable neglect and will remand case to district court." Defendant also states that failure to raise an issue in a prior forum is excusable when due to intervening change in the law. The Defendant argues that the Supreme Court overturned sentences that were doubled or enhanced. He states that he did not know that he could challenge his prior criminal history and requests that the Court reconsider his case or sentence because if he had known this, he would not have accepted his sentence. However, the Court notes that Defendant was asked if the presentence report was accurate, so he admitted his prior record. In Defendant's Motion to Amend, he states that his counsel was ineffective for failing to notify him of his right to direct appeal and to file a notice of appeal with a merits brief in support of disputed sentencing issues raised at the sentencing hearing.[3]

The Government responds that as applied to guilty pleas, the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, "he would not have

---

[3]Defendant further argues that if there is an appeal waiver provision incorporated into his plea agreement, to which he is currently unaware of, counsel never advised him of the consequences of such appellate waiver. However, the Court's review of the record does not indicate that a written plea agreement was filed.

pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. 52, 59 (1985). In *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990), the Eighth Circuit refused to reverse a guilty plea where the defendant could not show that counsel's error concerning parole was a direct cause of his guilty plea. Additionally, in order to obtain an evidentiary hearing, a 28 U.S.C. § 2255 petitioner must allege sufficient facts to entitle himself to relief. *Lewis v. United States*, 585 F.2d 915, 917 (8th Cir. 1978).

Defendant, in his Motion to Amend states that this Court should follow the Fourth, Seventh, and Ninth Circuits in finding that "a failure to appeal after a plea does, indeed, result in ineffective assistance of counsel, without a specific showing of prejudice." *United States v. Stearns*, 68 F.3d 328, 330 (9th Cir. 1995); *Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993). However, in *Roe v. Flores-Ortega*, 528 U.S. 470, 478-81, 484-86, 120 S. Ct. 1029, 1035-40 (2000), the United States Supreme Court abrogated *Stearns*, stating:

> The Courts of Appeals for the First and Ninth Circuits have answered that question with a bright-line rule: Counsel must file a notice of appeal unless the defendant specifically instructs otherwise; failing to do so is per se deficient. *See, e.g., Stearns*, 68 F.3d, at 330; *Lozada, supra*, at 958; *Tajeddini, supra*, at 468. Such a rule effectively imposes an obligation on counsel in all cases either (1) to file a notice of appeal, or (2) to discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly. **We reject this per se rule as inconsistent with Strickland's holding that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."** 466 U.S., at 688, 104 S.Ct. 2052.
> . . .
>
> We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense. See *id.,* at 689, 104 S.Ct. 2052 (rejecting mechanistic rules governing what counsel must do). **For example, suppose that a**

**defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable,"** *id.,* **at 691, 104 S.Ct. 2052, as a constitutional matter, in not consulting with such a defendant regarding an appeal.** Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.

**We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.** In making this determination, courts must take into account all the information counsel knew or should have known. See *id.,* at 690, 104 S.Ct. 2052 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

. . .

**The second part of the *Strickland* test requires the defendant to show prejudice from counsel's deficient performance.**

. . .

**[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.**

. . .

[W]e hold that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.

. . .

As with all applications of the *Strickland* test, the question whether a given defendant has made the requisite showing will turn on the facts of a particular case. See 466 U.S., at 695-696, 104 S.Ct. 2052. Nonetheless, evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination. We recognize that the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal. See *Hill, supra,* at 59, 106 S.Ct. 366 (when, in connection with a guilty plea, counsel gives deficient advice regarding a potentially valid affirmative defense, the prejudice inquiry depends largely on whether that affirmative defense might have succeeded, leading a rational defendant to insist on going to trial). But, while the performance and prejudice prongs may overlap, they are not in all cases coextensive. To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.

By the same token, although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed, a defendant's inability to "specify the points he would raise were his right to appeal reinstated," *Rodriquez,* 395 U.S., at 330, 89 S.Ct. 1715, **1040 will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed. See *ibid.;* see also *Peguero, supra,* at 30, 119 S.Ct. 961 (O'CONNOR, J., concurring) ("To require defendants to specify the grounds for their appeal and show that they have some merit would impose a heavy burden on defendants who are often proceeding *pro se* in an initial [habeas] motion"). **We similarly conclude here that it is unfair to *require* an indigent, perhaps *pro se,* defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal. Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed.**

After review of the record, the Court finds that Defendant's allegations fail to set forth a valid claim for relief. Based upon the representations by Defendant's counsel in his affidavit and the attached letter, it is clear to the Court that Defendant was advised of his right to appeal. Also, Defendant's counsel states in his affidavit, "Mr. Moreno never requested that I file an appeal in his case." It is also clear that counsel had no reason to believe that a rational defendant would want to appeal. Defendant entered a guilty plea without reserving any issues for appeal, which reduced the scope of potentially appealable issues. There was no written plea agreement in this case. However, as discussed above, the Court informed the Defendant at the plea hearing that it could not determine his actual sentencing range until it received the presentence report, and asked Defendant if he understood how the sentencing process worked. Defendant replied that he understood. The Defendant admitted the facts as alleged by the Assistant United States Attorney. The Court informed the Defendant at the plea hearing that if there were any factual errors or mistakes in the presentence report, they would have to be brought to the Court's attention before sentence is imposed. At the sentencing hearing, the Defendant did not point to any factual errors in the presentence report. Additionally, review of the transcripts from the sentencing hearing reveals that at no time during the sentencing hearing did Defendant or his counsel raise any "disputed sentencing issues." Importantly, in the motion presently before the Court, the Defendant still fails to allege that the presentence report contained any errors. Furthermore, the Defendant does not allege that his counsel knew or should have known that he was interested in appealing. Therefore, Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is denied.

Accordingly,

IT IS THEREFORE ORDERED THAT Defendant's Motion to Amend (Docket No. 42) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT the Government's Motion for Order to File Response Out of Time (Docket No. 38) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket No. 28) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT Defendant's Motion for Appointment of Counsel (Docket No. 40) be, and it is hereby, DENIED as moot.

Dated this 8th day of March, 2007.

                                              /s/Garnett Thomas Eisele
                                              UNITED STATES DISTRICT JUDGE